**EDWARD F. WESTFIELD, P.C.**
EDWARD F. WESTFIELD, ESQ . (NYS BAR NO. 1718287)
6218 RIVERDALE AVENUE
RIVERDALE, NY 10471
T: (718) 601-1100
F: (212) 601-1200
E: EFW@EFWPC.COM

-AND_

**Hyderally & Associates, P.C.**
TY HYDERALLY, ESQ. (NJSBA 85013)
33 PLYMOUTH STREET, SUITE 202
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-8500
FACSIMILE (973) 509-8501
E: TYH@EMPLOYMENTLIT.COM

Attorneys for Plaintiff: Wali Nassery

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **WALI NASSERY,** <br><br> **PLAINTIFF,** <br><br> **VS.** <br><br> **KOHL'S CORPORATION, JOSEPH FUSARO, in his official and individual capacities, JOHN DOES 1-10, AND XYZ CORP. 1-10,** <br><br> **DEFENDANTS.** | **CIVIL ACTION No:** <br> (        ) <br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff, Wali Nassery, ("Nassery" or "Plaintiff"), who resides at 154 Donato Drive, Little Falls, New Jersey 07424, by way of this Complaint against Defendants, Kohl's Corporation ("Kohl's"), Joseph Fusaro ("Fusaro"), in his official and individual capacities, John Does 1 – 10, and XYZ Corp. 1- 10 (hereinafter collectively "Defendants") hereby says:

## I. Nature of Action, Jurisdiction, and Venue

1. This is an action seeking equitable and legal relief for: (1) The Americans with Disabilities Act of 1990, United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26), codified at 42 U.S.C. § 12101 *et seq.* ("ADA") (disability discrimination); (2) ADA (retaliation); (3) a violation of the New York State and New York City Human Rights Law and Civil Rights Law (disability discrimination/harassment); (4) a violation of the New York State and New York City Human Rights Law and Civil Rights Law (retaliation); (5) breach of express contract; (6) breach of implied contract; and (7) breach of the implied covenant of good faith and fair dealing;.

2. Jurisdiction is asserted under 28 U.S.C. § 1331 in so far as Plaintiff's Complaint asserts claims under 42 U.S.C. § 12101 *et seq.* Supplemental jurisdiction is asserted over Plaintiff's state law claims under 28 U.S.C. § 1367.

3. Venue is appropriate in that the illegal and improper acts which are the basis for the within asserted causes of action occurred in the Southern District of New York, and the Defendants in this matter are the entities or organizations in the State of New York and acting in their individual and official capacities under color of New York law.

## II. Parties

4. Defendant Kohl's is a discount department store retail chain, with stores all over the country, and with its corporate headquarters located at N56 W17000 Ridgewood Drive, Menomonee Falls, Wisconsin 53051.

5. On or around October 10, 2013, Defendants hired Nassery as Store Manager for the Kohl's store located at 3008 East Main Street, Cortlandt Manor, New York 10567 ("Cortlandt Manor Store").

6. Thus, Plaintiff was an employee of the corporate Defendant and performed job-related duties in the State of New York.

7. During the relevant time period, Plaintiff reported directly to Fusaro, who was a District Manager for the defendant Corporation.

8. Additionally, Fusaro was a senior management-level employee who controlled Plaintiff's workplace and supervised Plaintiff and (1) aided the employer in performing a wrongful act

2

that caused an injury; (2) was generally aware of his role as part of an illegal or tortious activity at the time he provided assistance; and (3) knowingly and substantially assisted the employer in the principal violation of the statutes referenced herein.

9.      During the relevant time period, JOHN DOES 1-10 are currently unknown employees who were either senior management-level employees who controlled Plaintiff's workplace, and supervised Plaintiff and aided and/or abetted in the commission of conduct complained of herein and/or who either acted within the scope of their employment at the workplace during working hours, or, to the extent they went beyond the scope of their employment, Defendants ratified, embraced and added to their conduct.  As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual employees by name.

10.     During the relevant time period, XYZ Corp. 1-10 are unknown affiliated corporations or entities or other corporations who have liability for the claims set forth herein.  As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual entities by name.

11.     Thus, all Defendants are subject to suit under the statutes alleged above.

12.     At all times referred to in this Complaint, employees of the corporate Defendant, which is referred to herein, were acting within the scope of their employment at the workplace during working hours, or, to the extent that they were not so acting, the corporate Defendant ratified, embraced and added to their conduct.

### III. Factual Allegations

13.     On or around October 10, 2013, Defendants hired Nassery as a Store Manager.

14.     Nassery began his 30-day training at the Kohl's store in Wayne, New Jersey.

15.     In approximately November 2013, Nassery began working as a Store Manager for the Cortlandt Manor Store.

16.     In November 2013, when Nassery took over the Cortlandt Manor Store, in overall performance it was ranked 377 out of the 1,154 Kohl's stores in the nation.

17.     Nassery worked tirelessly to increase the store's performance which resulted in increases throughout 2014 in the store's rankings.

18. However, Nassery's efforts had consequences as he was not sleeping a sufficient number of hours and he suffered from anxiety.

19. Nassery's physician, Anthony Natelli, MD ("Dr. Natelli") became so concerned with Nassery's health that he prescribed him Lexapro during his October 7, 2014 and November 19, 2014 medical visits.

20. In late December 2014, Nassery discussed his medical condition with his supervisor, District Manager, Joseph Fusaro, as Nassery was concerned about the impact of his work on his health.

21. Nassery stated that he was committed to Kohl's but noted that the stress of getting the store's numbers increased resulted in him being diagnosed with an anxiety disorder by his doctor and Nassery having to take Lexapro that his doctor prescribed for him.

22. Fusaro appeared upset that Nassery suffered from such significant conditions and informed Nassery that Kohl's did not want "nut jobs" working for them.

23. Nassery took issue with Fusaro's clear animus against Nassery for suffering from a significant medical condition and informed Fusaro that his comments were offensive and inappropriate.

24. On December 18, 2014, Nassery became ill with an approximately 103 degree fever and flu-like symptoms.

25. At approximately 7:59 a.m., Nassery called the Cortland Manor Store, and spoke with Store Opening Supervisor, Yessica Morel ("Morel"), to advise Defendants that he would be absent from work due to his illness.

26. Despite his illness, Nassery still called to leave instructions with his staff so that the Cortland Manor Store would continue to run smoothly in his absence.

27. Shortly after speaking with Morel that morning, Nassery also called Fusaro to advise him of his absence due to illness.

28. Fusaro was extremely rude on the phone and sarcastically asked Nassery if his flu was due to his anxiety disorder.

29. Nassery took issue with Fusaro's sarcasm and stated that he was taking medication for his flu-like symptoms which made him very drowsy and significantly inhibited and limited his ability to drive or speak clearly.

4

30.     Nassery then spoke to Morel again who informed Nassery that Fusaro was asking questions about Nassery and making fun of Nassery's medical condition.

31.     Nassery sent Fusaro text messages confirming that he was out of work. (Exhibit "1").

32.     On December 19, 2014, Nassery was still feeling ill, and spoke with Receiving Supervisor, Andrea Travis ("Travis"), to advise Defendants that he would be absent from work again due to his illness.  Nassery further provided instructions for his staff to follow in his absence.

33.     Nassery also sent a follow-up text message to Fusaro to advise him of his absence.  (Exhibit "1").

34.     Nassery also called Fusaro and spoke with Fusaro on the phone to advise him that he was still feeling extremely ill.

35.     In response, Fusaro became angry and hostile and began berating Nassery for his medical conditions.

36.     Still ill and on medication, Nassery told Fusaro that he was shocked at Fusaro's behavior and could not understand why Fusaro was retaliating against him for being ill.  Nassery then advised Fusaro that he would report Fusaro's harassment to Regional Vice President, Steven Moon ("Moon"), Fusaro's boss.

37.     On December 20, 2014, Nassery was still not feeling well; however, he returned to work as he feared further retaliation from Fusaro.

38.     That same day, Nassery called Moon and explained to him that Fusaro's attitude was hostile and toxic, inducing and exacerbating his anxiety, and that Fusaro was further retaliating against Nassery for taking sick leave.

39.     Moon advised Nassery that he would take care of the situation, but failed to take curative action.

40.     A short while thereafter, on December 22, 2014, Nassery's adoptive mother passed away.

41.     On December 22, 2014 at approximately 6:30 a.m. – 7 a.m., Nassery called Fusaro on his cellphone and advised Fusaro that his adoptive mother died and that he needed to take bereavement leave, as per Kohl's bereavement policy.  (Exhibit "2").

42.     Kohl's bereavement policy stipulates that employees will receive eight hours of pay for up to three days of bereavement leave due to the death of a parent.

43. Rather than express his condolences, Fusaro immediately began to berate Nassery for needing to take time off to grieve and attend to his mother's death.

44. On or around December 23, 2014 at approximately 6:30 a.m. – 7 a.m., Nassery called Fusaro again to remind him that he would be out on bereavement leave so that he could make arrangements for the wake and funeral, which were taking place on December 26 and December 27, respectively.

45. Fusaro again reacted negatively to Nassery's request, and replied, with words to the effect, "You're not coming to work again?"

46. Fusaro offered no condolences and rather completely marginalized Nassery's grief over the death of his adoptive mother.

47. Fusaro's negative reaction caused Nassery to call Colleen Corrigan ("Corrigan"), his administrative assistant, and advise her that he might come into the office on his scheduled day off, December 24, 2014, but only if he was able to finalize the arrangements relating to his adoptive mother's death.

48. Nassery was not able to finalize the arrangements until December 26, 2014. However, although Nassery's adoptive mother's wake took place on December 26, 2014, Nassery still returned to work that same day, due to his fear of further retaliation from Fusaro.

49. When Nassery returned to work on December 26, 2014, Nassery learned that Corrigan had erroneously said that Nassery was coming into work on December 24, 2014, when Nassery stated that working on December 24, 2014, his scheduled day off, was conditional on finalizing funeral arrangements.

50. Corrigan apologized and admitted that she was preoccupied and distracted and thought that was what Nassery said.

51. At approximately 8 a.m., Fusaro stormed into Nassery's office and advised Nassery that he was terminated due to his absence during his sick leave and bereavement leave.

52. Nassery stated that he had only missed two days of work due to sick leave and two days due to bereavement leave and noted that Corrigan had apologized to him for making a mistake about December 24 as she should have stated that he would try to come to work if he was able to finalize funeral arrangements for his adoptive mother.

53.    Fusaro responded that the mistake by Corrigan was irrelevant as Nassery had been out of the store for nine consecutive days which was being treated as a "resignation."

54.    Nassery responded that he had no intention of resigning.   Nassery repeated that he only missed two days for sick leave on December 18 and 19, as well two days of bereavement leave on December 22 and 23.   Nassery further reminded Fusaro that December 24 was his scheduled day off, and that December 25, or Christmas Day, was a store holiday.

55.    However, Fusaro ignored Nassery's statements, and brusquely demanded that Nassery hand over the store keys while at the same time grabbing them from Nassery's hand.

56.    Fusaro summarily advised Nassery to immediately pack up his belongings and leave the premises, without even allowing him an opportunity to say good-bye to anyone.

57.    Further, Fusaro unilaterally terminated Nassery without any other managers present, although Kohl's company policy requires that a witness be present during any termination.

58.    Nassery later learned that Fusaro had already decided to terminate Nassery by December 23, 2014, the second and last day of Nassery's bereavement leave.

59.    Nassery learned that, on or before December 23, 2014, Fusaro had called Tasia Waller ("Waller"), another Kohl's employee, and asked her to work at the Cortland Manor Store to replace Nassery.

60.    Further, Fusaro had put an "X" next to Nassery's name on the Daily Lineup sheet for December 26. (Exhibit "3").

61.    The Daily Lineup sheet reflects staff work schedules and is usually drawn up two or more days in advance, during the holidays.

62.    Thus, Defendants' decision to terminate Nassery was made while Nassery was still on an approved bereavement leave.

63.    Defendants terminated Nassery despite the fact that his efforts had resulted in significant positive gains at the Cortlandt Manor Store.

64.    As reflected in the December 2014 scorecard, the store's overall ranking increased exponentially to 99 out of 1,154.  With regard to customer service, the store was ranked 7th out of 1,154 stores.  (Exhibit "4").

65.   The store's performance increased so that it was ranked 21 out of the 343 stores in the geographic "territory" on the East Coast, and 3 out of 58 stores in the geographic "region," (Exhibit "4").

66.   Meanwhile, Nassery was ranked in the top 10% of the company's best performers in 2014, and ranked as the #1 Store Manager in his District. (Exhibit "4").

67.   Nassery also scored an overall 93% in performance, based on a company-wide survey that was administered to the 129 associates who worked for Nassery. (Exhibit "4").

68.   On December 28, 2014, Nassery emailed Moon to seek clarification regarding his termination. (Exhibit "5").

69.   However, Moon and Defendants claimed that Nassery's discharge was a "voluntary resignation" despite the fact that Fusaro had clearly terminated Nassery. (Exhibit "5").

70.   At the time of his termination, on December 26, 2014, Nassery earned an annual salary of $120,800, and benefits to include medical coverage, dental coverage, optimal coverage, three weeks of vacation, five "comp" days, 30% on the base salary for bonus, and $3,000 as part of the Individual Performance Plan ("IPP").

71.   Nassery was also terminated prior to receiving his 30% bonus and salary increase in December 2014.

72.   Defendants' illegal actions resulted in Nassery suffering back wages, front wages, emotional distress damages, attorneys' fees and costs, interest, etc.

73.   Additionally, as reflected above, Defendants' actions resulted in Nassery suffering from emotional distress damages and/or physical injury and/or the physical manifestation of emotional distress injuries, while he worked for the Defendant Corporation.

74.   These benefits of employment make up Nassery's claim for damages.

75.   On or around May 18, 2015, Nassery filed a Charge of Discrimination ("COD") with the Equal Employment Opportunity Commission ("EEOC") pertaining to his disability discrimination/retaliation claims, which raised the same or reasonably related issues as those pled in this Complaint. (Exhibit "6").

76.   On or around June 12, 2015, the EEOC issued a right to sue letter to Nassery.

77.   Thus, Nassery has properly exhausted all his administrative remedies prior to filing this Complaint.

## FIRST CLAIM FOR RELIEF
### (The Americans with Disabilities Act of 1990 ("ADA")
### United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26)
### codified at 42U.S.C. § 12101 *et seq.)*
### (Disability Discrimination)

78.  Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

79.  The foregoing facts and circumstances demonstrate that Defendants have violated the ADA, by failing to accommodate Plaintiff and/or retaliating against Plaintiff for engaging in protected activity.

80.  As a direct and proximate result of Defendants' actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury.  Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

81.  Furthermore, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## SECOND CLAIM FOR RELIEF
### (ADA)
### (Retaliation)

82.  Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

83.  The foregoing facts and circumstances demonstrate that Defendants have violated the ADA, by engaging in acts of reprisal and/or retaliation because Plaintiff asserted his rights under the ADA and/or complained of disability discrimination/harassment and/or retaliation.

84.  As a direct and proximate result of Defendants' actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

85.    Furthermore, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### THIRD CLAIM FOR RELIEF
**(New York State and New York City Human Rights Law and Civil Rights Law)**
**(Disability Discrimination/Harassment)**

86.    Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

87.    The foregoing facts and circumstances demonstrate that Defendants have violated the New York State and New York City Human Rights Law and Civil Rights Law by discriminating and harassing Plaintiff due to his medical condition/disability/handicap and retaliating against Plaintiff for complaining about such discrimination and harassment.

88.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### FOURTH CLAIM FOR RELIEF
**(New York State and New York City Human Rights Law and Civil Rights Law)**
**(Retaliation)**

89.    Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

90.    The foregoing facts and circumstances demonstrate that Defendants have violated the New York State and New York City Human Rights Law and Civil Rights Law by retaliating against Plaintiff for taking medical leave and/or requesting accommodation, for suffering from a medical condition, and/or for complaining of discriminatory and/or retaliatory and/or harassing treatment.

91.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living,

and a diminished capacity to enjoy Plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

92.   Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## FIFTH CLAIM FOR RELIEF
### (Breach of Express Contract)

93.   Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

94.   Defendants had various contractual obligations contained in employment documents, handbooks, etc.

95.   Defendants were contractually obligated to have a manager present when it terminated Plaintiff.

96.   Defendants were contractually obligated to allow Plaintiff to take bereavement leave.

97.   Defendants were contractually obligated to not discriminate against disabled employees and/or employees who suffered from a medical condition/handicap.

98.   Defendants were contractually obligated to not retaliate against Plaintiff.

99.   Defendants' actions reflect a violation of their contractual obligations and gives rise to the claim of breach of express contract.

100.  As a direct and proximate result of Defendants' actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury.  Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

101.  Further, Plaintiff has been required to retain an attorney to assist plaintiff in asserting plaintiff's claims and protecting plaintiff's rights.

## SIXTH CLAIM FOR RELIEF
### (Breach of Implied Contract)

102.  Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

103.  Defendants made various oral agreements and representations to Plaintiff.

104.  Defendants violated these and other oral representations.

11

105.  Defendants' actions give rise to the claim of breach of implied contract.

106.  As a direct and proximate result of Defendants' actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury.  Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

107.  Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### SEVENTH CLAIM FOR RELIEF
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

108.  Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

109.  Defendants' actions give rise to the claim of breach of the implied covenant of good faith and fair dealing.

110.  As a direct and proximate result of Defendants' actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury.  Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

111.  Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.


**WHEREFORE**, as to each and every count, Plaintiff demands judgment on each and all of these Counts against defendants, jointly and severally, as follows:

A.  Compensatory damages;

B.  Damages for lost wages and benefits, back pay, front pay (or reinstatement);

C.  Damages for humiliation, mental and emotional distress;

D.  Statutory damages, if applicable;

12

E.     Punitive damages and or liquidated damages where permitted by law;

F.     Attorneys' fees and costs of suit;

G.     Lawful interest - including pre-judgment interest on lost wages;

H.     Lawful interest - including pre-judgment interest on any wages not paid in a
       timely manner; and

I.     Such other, further and different relief as the Court deems fitting, just and
       proper.

Plaintiff hereby reserves the right to amend this Complaint to supplement or modify the factual obligations and claims contained herein, based upon information received from the defendants, witnesses, experts, and others in the course of discovery in this matter.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully demands a trial by jury on all issues in the within action so triable.

## DESIGNATION OF TRIAL COUNSEL

TY HYDERALLY is hereby designated as trial counsel on behalf of plaintiff.

## CERTIFICATION OF NO OTHER ACTIONS OR PARTIES

I hereby certify that there are no other parties known to me at this time who should be joined as parties to this action.

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.

13

If so, please attach a copy of each, or in the alternative state, under oath and certification: (A) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

DATED:       July 1, 2015

HYDERALLY & ASSOCIATES, P.C.
*Attorneys for Plaintiff*

By:      */s/ Ty Hyderally*
         TY HYDERALLY, Esq.
         For the Firm

Edward F. Westfield, P.C.
*Attorneys for Plaintiff*

By:      */s/ Edward F. Westfield*
         EDWARD F. WESTFIELD, Esq.
         For the Firm

T:\1 Law Offices of Ty Hyderally\Nassery Wali\Pleadings\040715.COM.doc

14